Case 22-1048, Document 117, 12/21/2022, 3441522, Page1 of 9
N.Y.S.D. Case #
19-cr-0780(LAK)

22-1048-cr
*United States v. Ash*

MANDATE

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of November, two thousand twenty-two.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ________________
DATE FILED: Dec 22 2022

PRESENT:
PIERRE N. LEVAL
DENNY CHIN
EUNICE C. LEE,
*Circuit Judges*.

---

UNITED STATES OF AMERICA,

*Appellee*,

v. No. 22-1048-cr

SYLVIA ASH, AKA SEALED DEFENDANT 1,

*Defendant-Appellant*.

---

For Defendant-Appellant: JUSTINE HARRIS (Noam Biale & Maya Brodziak, *on the brief*), Sher Tremonte LLP, New York, New York.

For Appellee: ELI J. MARK, Assistant United States Attorney (Daniel C. Richenthal, Jonathan E. Rebold, & Danielle R. Sassoon, Assistant United States Attorneys, *on the brief*), *for* Damian Williams, United States Attorney for the Southern District of New York, New York, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Kaplan, *J.*).

MANDATE ISSUED ON 12/21/2022

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Sylvia Ash appeals from her criminal conviction on charges of conspiracy to obstruct justice, obstruction of justice, and making false statements to federal officers. Ash was a judge in the courts of New York State since 2005 and also served as member of the Board of Directors (the "Board") of Municipal Credit Union ("MCU"), a nonprofit credit union, from May 2008 until August 2016, when she resigned. During her last year on the Board, Ash was Board Chair. In 2015, Ash inquired about whether she could serve as Board Chair, and the New York State Advisory Committee on Judicial Ethics told her she should resign from her Board position entirely. Ash kept her Board position for another year, only resigning after the New York State Commission on Judicial Conduct filed a complaint against her in 2016.

Although Board positions are unpaid, Ash received tens of thousands of dollars in benefits in connection with her position, including sporting event box seats for her private use, travel, personal expenses including "cable internet reimbursement," and Apple electronic devices. App'x 638. She did not disclose these benefits on state financial disclosure forms she had to file annually due to her position as a judge. Many of the benefits Ash received were controlled by MCU's then-CEO and President, Kam Wong.

On January 18, 2018, federal investigators interviewed Wong about millions of dollars in checks MCU had issued to him. Wong told them that these payments were proper due to a term in his employment contract and that the Board had approved the payments. The next day, Wong met with Ash in MCU's offices, gave her an iPhone X as a "belated birthday/Christmas gift," and presented her with a memo to sign. App'x 564, 570–71. According to the memo, Ash agreed

that MCU properly owed Wong approximately $3.7 million after taxes due to a condition of Wong's employment with MCU. Ash signed the memo. Wong turned over a copy of the signed memo to federal investigators on January 25, 2018.

On March 1, 2018, Ash voluntarily met with investigators in the United States Attorney's Office for the Southern District of New York (the "USAO"). Confronted with the memo she had signed at Wong's behest, Ash told investigators that the memo was not accurate and that she did not agree with the amount of money listed in the document. Ash then gave false statements to the investigators about how MCU's general counsel told her it would be "legal but not advisable" to pay Wong as stated in the memo. App'x 495.

In May of 2018, in part due to Wong's embezzlement, the New York Department of Financial Services took over managing MCU. On or about May 7, 2018, Wong was arrested and charged with embezzlement in the Southern District of New York. MCU issued a contemporaneous press release about Wong's arrest, stating that MCU was cooperating with the USAO and was conducting its own internal investigation.[1]

First in mid-March of 2018, and then again in June of 2018, Ash received subpoenas for documents and communications relating to Wong and MCU's payments to him. Ash responded to the first subpoena by saying she had no responsive documents. She responded to the second subpoena, through counsel, with a production that later was shown to have been materially incomplete.

---

[1] Wong was eventually convicted and sentenced to five and a half years in prison. Judgment in a Criminal Case, *United States v. Wong*, Case No. 1:18-cr-00737-JGK (S.D.N.Y. June 13, 2019).

In May 2018, Ash received an email from MCU requesting the return of any of its electronic devices she had in her possession, "per MCU protocol." App'x 619. MCU then clarified that Ash did not need to return any devices she had possessed for more than three years and instructed her to "disregard" the initial request." *Id.* In June 2018, Ash received a further written request from MCU, again demanding the return of any electronic devices, including those given to her by Wong. *Id.* at 896. MCU cautioned Ash not to "wipe, delete, factory restore, image or copy any of MCU's electronic devices." *Id.*

Through counsel, Ash returned the iPhone X and an Apple Watch. However, before she returned them, Ash took the iPhone X to an Apple Store and had it factory reset, which caused data to be deleted from it. She also deleted text messages and emails that were responsive to the government's subpoenas. MCU handed the iPhone over to the government and consented to its being used in a search. Upon seeing that the iPhone had been reset, the government obtained warrants for stored communications, including communications in Ash's Gmail account, relying in part on the fact that the iPhone had been wiped.

On July 9, 2018, Ash had another interview with federal investigators, this time accompanied by her own counsel, during which she made various false statements, including about MCU's payments to Wong and about not possessing certain documents.

Ash was arrested on October 11, 2019. The operative superseding indictment charged her with conspiring to obstruct justice between January of 2018 and July of 2018 in violation of 18 U.S.C. §§ 1519 and 1512(c) ("Count One"); with obstructing justice by falsifying or creating a false document in violation of § 1519 ("Count Two"); with obstructing justice by corruptly concealing and deleting texts and emails or making false statements in violation of § 1512(c)

("Count Three"); and with making false statements in violation of § 1001(a) ("Count Four"). Ash was convicted on Counts One, Three, and Four, and acquitted on Count Two. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

Ash raises four arguments on appeal.

*First*, she argues that the district court erred in not granting her motion to suppress the iPhone X or any information obtained from the search warrant based on the seizure of the iPhone X. Ash contends that she was effectively compelled to give MCU the iPhone. In the alternative, she argues that she should have been granted a pre-trial hearing into the extent to which the government was involved with MCU's internal investigation, including its efforts to get the iPhone X from Ash. To the extent Ash argues that the iPhone was obtained in violation of her Fifth Amendment right against self-incrimination, that argument fails. To prevail, Ash would need to "demonstrate the existence of three elements: 1) compulsion, 2) a testimonial communication, and 3) the incriminating nature of that communication." *In re Grand Jury Subpoena*, 826 F.2d 1166, 1168 (2d Cir. 1987). But Ash did not show compulsion, as she does not articulate "circumstances that overb[ore] the defendant's will." *United States v. Anderson*, 929 F.2d 96, 99 (2d Cir. 1991). Here, Ash only argues that MCU's communications demanding the return of the iPhone X "raised the specter" of "legal action" and thus "implicit[ly] threat[ened]" Ash. Appellant's Br. 25. Even assuming that MCU's communications are wholly attributable to the government, these arguments are not enough to show that the communications overcame Ash's will. To the contrary, the communications told

Ash not to delete data off the iPhone X, but she did so anyway, demonstrating that Ash did not feel compelled to comply exactly as MCU told her.

To the extent Ash argues that the iPhone X should have been suppressed because the government violated her due process rights in using the MCU internal investigation to gather evidence, Appellant's Br. 26, that argument is forfeited because she did not make it below. *See Greene v. United States,* 13 F.3d 577, 586 (2d Cir. 1994). Her argument for suppression before the district court was premised solely on the notion that MCU compelled Ash to return the iPhone in violation of her Fifth Amendment right against self-incrimination, not on any other ground.

*Second*, Ash contends that the district court erred in overruling her objections to evidence of valuable benefits she received for being on the Board and her failure to disclose those benefits on her obligatory financial disclosure forms. This evidence was admissible as it tended to show motive and consciousness of guilt. *See United States v. Mercado*, 573 F.3d 138, 141 (2d Cir. 2009). The district court furthermore properly instructed the jurors that they were only to consider it to assess "defendant's motive, knowledge, and intent with respect to what she has been charged with in the indictment," and not for anything that may suggest Ash had a "propensity" to commit the crimes charged. App'x 843–44. *See Mercado*, 573 F.3d at 141 (rejecting challenge to admission of "prior bad acts evidence" where "[t]he evidence was also accompanied by a careful and thorough instruction limiting the evidence to relevant [FRE] 404 grounds").

*Third*, Ash argues that the district court erred in instructing the jury on Count Three. This contention is subject to plain error review because she did not object at trial. "On plain error review, the burden rests on the appellant to establish that there is '(1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then

exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *United States v. Jenkins*, 43 F.4th 300, 302 (2d Cir. 2022) (quoting *United States v. Solano*, 966 F.3d 184, 193 (2d Cir. 2020)). In reviewing jury instructions for error, we "determine whether considered as a whole, the instructions adequately communicated the essential ideas to the jury," not whether there was error "on the basis of excerpts taken out of context." *United States v. Sabhnani*, 599 F.3d 215, 237 (2d Cir. 2010) (internal quotation marks and citations omitted).

Here, Ash objects to the district court's explanation to the jury of what it means to have acted "corruptly" in the context of obstructing justice under Count Three. Among other things, she contends that the district court's instruction allowed the jury to convict her of obstructing an official proceeding if it found that she had any "bad purpose," rather than one specifically connected with impeding an official proceeding, as required by the statute. *See* Appellant's Br. 41. We disagree. Viewed as a whole, the district court's instructions told the jury that it could only convict Ash on Count Three if it found that Ash acted corruptly in taking actions meant to impair an official proceeding, and in particular, that Ash must have known these corruptly taken actions were likely to interfere with the proceeding. Further, even if we found error in the instruction, the error would not be plain. The district court provided a definition of the word "corruptly" that has been affirmed in Circuit precedent. *See United States v. Ng Lap Seng*, 934 F.3d 110, 142 (2d Cir. 2019) ("When a statute uses the word 'corruptly,' the government must prove more than the general intent necessary for most crimes. It must prove that a defendant acted 'with the bad purpose of accomplishing either an unlawful end or result, or a lawful end or result

by some unlawful method or means.'" (quoting *United States v. McElroy*, 910 F.2d 1016, 1021–22 (2d Cir. 1990)).

*Fourth*, Ash argues that the district court erred by premising its sentence on conduct of which Ash was acquitted in Count Two. "A district court may treat acquitted conduct as relevant conduct at sentencing, provided that it finds by a preponderance of the evidence that the defendant committed the conduct." *United States v. Pica*, 692 F.3d 79, 88 (2d Cir. 2012). However, "[w]here we identify procedural error in a sentence, but the record indicates clearly that the district court would have imposed the same sentence in any event, the error may be deemed harmless, avoiding the need to vacate the sentence and to remand the case for resentencing." *United States v. Jass*, 569 F.3d 47, 68 (2d Cir. 2009) (internal quotation marks omitted).

Here, it is clear to us that any error in the use of acquitted conduct did not affect Ash's sentence. The district court sentenced Ash to "a term of imprisonment of 15 months." App'x 1232. Whereas the presentence report calculated her sentencing guidelines range as one providing for a 46- to 57-month custodial sentence, Ash argued to the district court that, absent acquitted conduct, her guidelines "range instead should be 30 to 37 months' imprisonment." Sentencing Mem. on Behalf of Sylvia Ash at 2, *United States v. Ash*, Case No. 1:19-cr-780-LAK (S.D.N.Y. Apr. 8, 2022), ECF No. 173. During sentencing, the district court overruled Ash's objections but told the parties that "the sentence that will be imposed will make that ruling immaterial," and that its "sentence w[ould] be the same under either [party's proffered] guideline range." App'x 1200. Thus, not only did the district court make clear that Ash would have received the same sentence regardless, but the sentence she did receive was significantly less than what even she argued the guidelines called for.

* * *

We have considered Ash's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit